The Honorable Robert S. Lasnik

1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| JD INVESTMENT CO, LLC, a Washington limited liability company, direct and derivatively on behalf of AGRIHOUSE, LLC, a Washington limited liability company, | Civil Action No.: 2:09-CV-00752-RSL |
| Petitioner, | RESPONDENTS' MOTION TO DISMISS PETITIONERS' PETITION FOR ARBITRATION |
| v. | |
| AGRIHOUSE, INC., a Colorado corporation, and ROBERT J. ATWELL, JR., an individual residing in the State of Florida, | **NOTE ON MOTION CALENDAR: JULY 17, 2009** |
| Respondents. | |

Respondents Agrihouse, Inc. and Robert J. Atwell, by and through their attorney, Spencer

D. Freeman, hereby submit this Motion to Dismiss Petitioner's Petition for Arbitration, and state

as follows:

RESPONDENTS' MOTION TO DISMISS - 1
PETITIONERS' PETITION FOR ARBITRATION

**FREEMAN LAW FIRM, INC.**
2104 North 30th Street
Tacoma, WA 98403
(253) 383-4500 – (253) 383-4501 (fax)

## I.      **BACKGROUND FACTS**

Agrihouse, Inc. is the owner of several patents and other intellectual property that attracted the interest of Dori Karjian and Jim Rulfs.  Karjian and Rulfs approached Agrihouse, Inc. and negotiated to form a future company that would market a portion of Agrihouse, Inc.'s intellectual property.  These negotiations were never completed and Agrihouse, Inc. has never assigned or licensed any of its intellectual property to any entity related to Karjian or Rulfs.

Karjian and Rulfs nevertheless formed Agrihouse, LLC as well as JD Investment Co, LLC ("JD Investment"), again for the purpose of reaching an agreement on Agrihouse, Inc.'s intellectual property.  Petitioners and Respondents, around the time Karjian and Rulfs formed Agrihouse, LLC, signed a document entitled the Limited Liability Company Agreement of Agrihouse, LLC ("LLC Agreement").  **All parties signed the LLC Agreement, but key documents required to complete the LLC Agreement were never signed**.  (LLC Agreement, attached as **Exhibit A**).

Using the unfinished and unenforceable document titled "LLC Agreement," JD Investment set about to pressure Agrihouse, Inc. into assenting to the terms of a proposed asset purchase agreement, a fourteen-page document that was drafted by Dori Karijan without any input or comment from Robert Atwell or Agrihouse, Inc.  **The LLC Agreement purports to incorporate by reference an agreement, titled the "Asset Purchase Agreement," which did not exist at the time the LLC Agreement was drafted and which has never been executed**.  The non-existent Asset Purchase Agreement was to be the consideration for the LLC Agreement.  The LLC Agreement also purports to incorporate by reference another non-existent agreement, the Contribution Agreement.  **While both the Asset Purchase Agreement and the Contribution Agreement were to determine the essential elements of the LLC Agreement,**

RESPONDENTS' MOTION TO DISMISS - 2
PETITIONERS' PETITION FOR ARBITRATION

**FREEMAN LAW FIRM, INC.**
2104 North 30th Street
Tacoma, WA 98403
(253) 383-4500 – (253) 383-4501 (fax)

**the parties have been unable to come to an agreement as to either the Asset Purchase Agreement or the Contribution Agreement.**

Using the unfinished and unenforceable LLC Agreement, JD Investment repeatedly threatened to drag Agrihouse, Inc. into expensive and distant arbitration.  It also threatened to prevent Agrihouse, Inc. from entering into agreements affecting the use of the Intellectual Property.  In so doing, JD Investment impaired Agrihouse, Inc.'s reasonable use and enjoyment of its rightful property.

After receiving the October 22, 2008 letter from JD Investment, Agrihouse, Inc., Richard J. Stoner, and Robert J. Atwell filed their Complaint in the United States District Court for the District of Colorado seeking declaratory relief.  The only relief sought in the District Court for Colorado was a declaration that the LLC Agreement was fatally flawed and incomplete and therefore unenforceable.

Petitioner filed its first Petition for Arbitration in the Western District of Washington, which Judge Martinez dismissed on the grounds of comity, holding that "**if the Operating Agreement is unenforceable, the arbitration clause in the Operating Agreement is unenforceable as well.  This Court cannot proceed to enforce the arbitration clause until the validity and enforceability of the agreement as a whole has been determined**." (Martinez Order, attached as **Exhibit B**.)  Judge Martinez sent the case back for determination before the Colorado court.

Petitioner managed to get a second bite at the apple in Colorado, convincing the court that the entirety of Judge Martinez's order was mere dicta.  The District of Colorado, acknowledging it lacked the authority to order arbitration, administratively closed the Colorado

RESPONDENTS' MOTION TO DISMISS - 3
PETITIONERS' PETITION FOR ARBITRATION

declaratory judgment action and allowed Petitioners to attempt, once more, to convince this Court to order Respondents to an arbitration proceeding to which they never agreed.

## II.    SUMMARY OF THE ARGUMENT

Petitioner JD Investment Co, LLC ("JD Investment") has brought this Petition for Arbitration to force a controversy between what it claims are Class A, Class B-1 and Class B-2 Members and the rights of Agrihouse, LLC itself into arbitration. Petitioner, however, misstates the Dispute Resolution Section upon which it bases its arbitration petition. That Dispute Resolution Section states, very clearly, that the Dispute Resolution Section only applies to two kinds of disputes: disputes between *Common Members* (a defined terms in the LLC Agreement meaning holders of Class C membership interests) and *Board Impasses*. This Court should dismiss the Petition for Arbitration because it attempts to force into arbitration disputes that are clearly outside the plain scope of the Dispute Resolution Provision.

Petitioner attempts to assert the rights of Agrihouse, LLC derivatively, but cannot establish that it has properly complied with Rule 23.1. The determination that a petitioner has complied with Rule 23.1 is a jurisdictional prerequisite, and therefore must precede any determination under 9 U.S.C. § 4, as § 4 only permits petitions for arbitration in courts that would otherwise have jurisdiction. If this Court, contrary to the plain language of the Dispute Resolution Provision, finds that the Dispute Resolution Section could even apply to a derivative lawsuit, this Court would be forced to address the validity of the LLC Agreement as a whole to determine the control structure of the LLC. Because the LLC Agreement as a whole is fatally flawed, incomplete, and nothing but an unenforceable agreement to agree, this Court should dismiss Petitioner's Petition as, once it determines the LLC Agreement is unenforceable, there is nothing for the Parties to arbitrate and the Petition is moot.

RESPONDENTS' MOTION TO DISMISS - 4
PETITIONERS' PETITION FOR ARBITRATION

Finally, the Dispute Resolution Section is fatally flawed and incorporates non-existent agreements.  Just as the LLC Agreement as a whole requires the execution of an Asset Purchase Agreement (which Petitioners concede was never executed), the Dispute Resolution Section, which incorporates the entire LLC Agreement, requires the execution of an Asset Purchase Agreement.  Judge Martinez, addressing the Dispute Resolution Section, has already ruled that "**if the Operating Agreement is unenforceable, the arbitration clause in the Operating Agreement is unenforceable as well.  This Court cannot proceed to enforce the arbitration clause until the validity and enforceability of the agreement as a whole has been determined**."   (Martinez Order, attached as **Exhibit B**.)   Because this Court must address the enforceability of the agreement as a whole, and because the agreement as a whole is unenforceable, this Court should dismiss the Petition for Arbitration.

### III.   ASSUMING THE LLC AGREEMENT AND THE DISPUTE RESOLUTION SECTION ARE ENFORCEABLE, THE DISPUTE RESOLUTION SECTION DOES NOT APPLY TO THE INSTANT DISPUTE

Assuming, arguendo, that the LLC Agreement and the Dispute Resolution Section are enforceable, by its plain terms the Dispute Resolution Section simply does not apply in this case.  In assessing whether a dispute should be sent to arbitration, the "general rule is that whether and what the parties have agreed to arbitrate is an issue for the courts to decide."  *Gee West Seattle, LLC v. Huling Buick, Inc.*, 146 Wash. App. 1015, *2 (2008)(citing *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 546-47, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964)).   "To rule that a particular dispute is not arbitrable under an arbitration agreement, the court must be able to say with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *Id.* (citing *Local Union No. 77, Int'l Bhd. of Elec. Workers v. Pub. Util. Dist. No. 1,* 40 Wash.App. 61, 65, 696 P.2d 1264 (1958)).

RESPONDENTS' MOTION TO DISMISS - 5
PETITIONERS' PETITION FOR ARBITRATION

**FREEMAN LAW FIRM, INC.**
2104 North 30th Street
Tacoma, WA 98403
(253) 383-4500 – (253) 383-4501 (fax)

"The duty to arbitrate a dispute arises from the language of the contract itself." *Id.* (citing *Stein v. Geonerco, Inc.,* 105 Wash.App. 41, 45, 17 P.3d 1266 (2001)). "An agreement for the submission of a dispute to arbitration defines and limits the issues to be decided." *Id.* (citing *Sullivan v. Great American Ins. Co.,* 23 Wash.App. 242, 246, 594 P.2d 454 (1979)). "Although public policy strongly favors arbitration as a remedy for settling disputes, **arbitration 'should not be invoked to resolve disputes that the parties have not agreed to arbitrate**.'" *Id.* (citing *King County v. Boeing Co.,* 18 Wash.App. 595, 603, 570 P.2d 713 (1977)) (emphasis added). "**It is the duty of the court to determine the meaning of what is written, not what one party intended the writing to mean**." *Id.* (quoting *Stein,* 105 Wash.App. at 48, 17 P.3d 1266) (emphasis added).

A.      **THE DISPUTE RESOLUTION SECTION APPLIES ONLY TO DISPUTES BETWEEN COMMON MEMBERS AND BOARD DEADLOCK**

The Dispute Resolution Section defines the scope of its application in Section 12.13(a):

This <u>Section 11.14</u> [sic] shall apply to any dispute arising under or related to this Agreement or the Contribution Agreement (whether arising in contract, tort or otherwise, and whether arising at law or in equity) ***involving Common Members and their affiliate or related parties***, including (i) any dispute regarding the construction, interpretation, performance, validity or enforceability of any provision of this Agreement or the Contribution Agreement or whether any person is in compliance with, or breach of, any provisions hereof or thereof and (ii) the applicability of this <u>Section 11.14</u> [sic] to a particular dispute. ***The provisions of this Section 11.13 [sic] shall also apply if there is a deadlock or impasse at the Board such that the business of the Company is no longer being conducted by the Board due to the failure of Managers to reach agreement on a regular basis on matters coming before it***.  Any such deadlock or impasse and any dispute to which this <u>Section 11.14</u> [sic] applies as described above is referred to here in as a "<u>Dispute</u>."

RESPONDENTS' MOTION TO DISMISS - 6
PETITIONERS' PETITION FOR ARBITRATION

**FREEMAN LAW FIRM, INC.**
2104 North 30th Street
Tacoma, WA 98403
(253) 383-4500 – (253) 383-4501 (fax)

The provisions of this <u>Section 11.14</u> [sic] shall be the exclusive method of resolving Disputes. (Section 12.13, Dispute Resolution Section, attached as **Exhibit A**.)

By its plain language, the Dispute Resolution Section applies in only two cases: (1) where there is a dispute involving Common Members, and (2) to Board deadlock.   JD Investment claims that the instant dispute falls within the first category.  (Petition, Dk. No. 1, ¶ 7; Dec. 15 Dec. of Dori Karjian, ¶ 7, attached as **Exhibit C**; Nov. Petition, ¶ 5, attached as **Exhibit D**.)  This claim fails.

**B.     AS THERE ARE NO COMMON MEMBERS, THE INSTANT DISPUTE <u>DOES NOT INVOLVE COMMON MEMBERS</u>**

The Agreement expressly states that the Company shall have <u>four</u> classes of Units, "designated Class A Units, Class B-1 Units, Class B-2 Units, and Common Units each having the rights, privileges and obligations set forth herein."  (**Ex A**, Section 6.1.)  The term "Common Member" is a defined term in the LLC Agreement.  "'<u>Common Member</u>' shall mean, at any time, a Member who holds Common Units."  (**Ex. A**, pg. 4; Declaration of Dori Karjian, ¶¶ 3-5, Dk. No. 1.)  Likewise, the Agreement states that the term "'<u>Class A Member</u>' shall mean, at any time, a Member who holds Class A Units," "'<u>Class B-1 Member</u>' shall mean, at any time, a Member who holds Class B-1 Units," and "'<u>Class B-2 Member</u>' shall mean, at any time, a Member who holds Class B-2 Units."  (<u>Id.</u>)

Assuming, arguendo, that the LLC Agreement is enforceable and that the transfer of membership interests it outlines occurred or should have occurred, Agrihouse, Inc. is a Class A Member, holding eighty percent of the outstanding membership units, JD Investment is a Class B-1 Member, holding ten percent of the outstanding membership units, and Robert J. Atwell is a Class B-2 Member, holding the remaining ten percent of the outstanding membership units. (Agreement, Schedule A, attached as **Exhibit A**; Dec. of Dori Karjian, ¶¶ 3-5, Dk. No. 1.)

RESPONDENTS' MOTION TO DISMISS - 7
PETITIONERS' PETITION FOR ARBITRATION

**FREEMAN LAW FIRM, INC.**
2104 North 30th Street
Tacoma, WA 98403
(253) 383-4500 – (253) 383-4501 (fax)

**There are no Common Members as no Common Units are to be issued under the LLC Agreement**.

The instant dispute is between a Class A Member, a Class B-1 Member, and a Class B-2 Member, as well as the Agrihouse, LLC (which is not a member of itself).   No Common Members are in any way involved in this dispute.   Therefore, the instant dispute falls outside of the scope of the Dispute Resolution Section, and the Petition for Arbitration should be dismissed.

## IV.   THE PETITION SHOULD BE DISMISSED AS IT FAILS TO COMPLY WITH RULE 23.1

Petitioner has brought the instant action derivatively in an attempt to assert the rights of Agrihouse, LLC to arbitration[1], claiming that demand on the Agrihouse, LLC board of managers would be futile.   To determine the validity of Petitioner's futility claim, it is necessary for this Court to address the validity of the LLC Agreement as a whole, for without such an examination this Court simply cannot determine the nature of Agrihouse, LLC's management structure or asses Petitioner's claim.   Because the LLC Agreement is unenforceable, this Court should dismiss the Petition for Arbitration as moot.

**Whether a party has complied with the pleading requirements of Rule 23.1 is logically antecedent to the issue of whether a court has jurisdiction.**   *Potter v. Hughes*, 546 F.3d 1051, 1056 (9th Cir. 2008).   "Pursuant to Rule 23.1, a putative derivative plaintiff can initiate a derivative action only if he or she makes an adequate demand on the Board under the applicable state law."   *Id.*   **This Court must determine that a proper demand was made in order to exercise jurisdiction.**   *Id.*   Rule 23.1 states:

---

[1] Of course, nothing in the Dispute Resolution Section gives Agrihouse, LLC any right to arbitration – the Dispute Resolution Section only gives that right to Common Members and to Board Impasses.

RESPONDENTS' MOTION TO DISMISS - 8
PETITIONERS' PETITION FOR ARBITRATION

**(a) Prerequisites.**  This Rule applies when one or more shareholders or members of a corporation or an unincorporated association bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce.  The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association.

**(b) Pleading Requirements.**  The complaint must be verified and must:

(1) allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law;

(2) allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack; and

(3) state with particularity:

(A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and

(B) the reasons for not obtaining the action or not making the effort.

"Rule 23.1 thus codifies the long-standing requirement that a plaintiff who pursues the extraordinary remedy of a derivative suit make demand upon his corporation's directors." *Johnson v. Hui*, 752 F.Supp. 909, 911 (N.D. Cal. 1990).  "This requirement is not merely a technical pleading hurdle; it is based upon a fundamental tenet of American corporate law that places the responsibility for making decisions in the hands of the board of directors."  *Id.* Petitioner, in its Petition, treats Rule 23.1 as a mere formality, failing to comply with its requirements.  For this reason, Petitioner's petition should be dismissed pursuant to Rule 12(b)(1).

A.    **Petitioner's Demand was Insufficient to Satisfy Rule 23.1**

"The sufficiency analysis under Rule 23.1 looks to the sufficiency of the content of the demand and the sufficiency of the authority to whom the demand is presented."  *Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204 (9th Cir. 1980).

First, a party seeking to bring an action under Rule 23.1 must demonstrate that the content of the demand was sufficient.  *Id.*  Petitioner alleges that it gave notice in its October 22,

RESPONDENTS' MOTION TO DISMISS - 9
PETITIONERS' PETITION FOR ARBITRATION

**FREEMAN LAW FIRM, INC.**
2104 North 30th Street
Tacoma, WA 98403
(253) 383-4500 – (253) 383-4501 (fax)

2008 letter.  (Dec. D. Karjian, Dk. 1, ¶ 9.)  Petitioner's demand went only to Robert Attwell (individually) and Richard Stoner (on behalf of Agrihouse, Inc.) - no demand was made on the any Board of Members of Agrihouse, Inc.  (October 22 Letter, attached as **Exhibit E**.)

Rule 23.1 requires that a shareholder or member of a company or organization demand that the organization enforce its rights before a derivative action is permissible.  Nothing in the October 22, 2008 letter indicates it is urging Agrihouse, LLC to enforce any right.  Nowhere in the letter is any mention made of Agrihouse, LLC's rights, and no request is made to enforce those rights.  **Because the notice was grossly insufficient to constitute a demand that Agrihouse, LLC enforce its rights, Petitioner's Petition should be dismissed for failure to satisfy Rule 23.1.**

Second, a party seeking to bring an action under Rule 23.1 must state with particularity that they gave sufficient notice to a person or persons with proper authority.  *Greenspun v. Del E. Webb Corp*, 634 F.2d at 1209 (Finding that presentation of demands to President/Director and General Counsel of corporation, rather than to board of directors, did not satisfy Rule 23.1).  The October 22, 2008 letter, which is the only notice Petitioner claims to have given to Agrihouse, LLC, is addressed to Richard Stoner and Robert Atwell *as shareholders*, not as board members.

Both of these points indicate a deeper flaw with Petitioner's reasoning.  **It is impossible to assess Petitioner's demand and futility arguments without assessing the validity of the LLC Agreement**.  Respondents, for example, deny that Agrihouse, Inc. or Robert Atwell received any membership interests or have any role in running JD Investment.  Therefore, **before this Court can reach the jurisdictional question of whether Petitioner has complied with Rule 23.1, this Court must address the issue of the validity of the LLC Agreement**.  As discussed below, the LLC Agreement was never completed and is unenforceable.  Therefore, this

RESPONDENTS' MOTION TO DISMISS - 10
PETITIONERS' PETITION FOR ARBITRATION

**FREEMAN LAW FIRM, INC.**
2104 North 30th Street
Tacoma, WA 98403
(253) 383-4500 – (253) 383-4501 (fax)

Court should hold that the LLC Agreement is unenforceable and dismiss the Petition for Arbitration as moot, the issue of the enforceability of the LLC Agreement having already been decided.

### B.   Petitioner has Failed to State with Particularity the Response to its Purported Demand.

A generalized claim that a LLC has failed to take the requested action is insufficient for purposes of Rule 23.1. Rule 23.1 requires that Petitioner state with particularity *why* Agrihouse, LLC is unable to bring the instant action. Fed. R. Civ. P. 23.1(b)(3)(b); *see also Allison v. General Motors Corp.*, 604 F.Supp. 1106, 1113 (D. Del. 1985). **Because Petitioner's Petition is completely silent on *why* Agrihouse, LLC is unable to bring this suit, Rule 23.1 requires that this court dismiss the Petition for lack of jurisdiction.**

The reality is that Agrihouse, LLC is unable to bring an action on its own accord because its operating agreement is contested. Again, to reach the jurisdictional question of whether Rule 23.1 has been complied with, this Court must address the fundamental issue of the enforceability and validity of the LLC Agreement.

### V.   THE LLC AGREEMENT IS UNENFORCEABLE

It is undisputed that the LLC Agreement calls for the execution of an Asset Purchase Agreement, and it is undisputed that no asset purchase agreement was ever executed. (LLC Agreement, attached as **Exhibit B**; **Scheduling Order**, attached as **Exhibit F**.)

### A.   The Court Should Decide this Motion on the Plain, Unambiguous Language of the LLC Agreement

Colorado's Court of Appeals recently summarized Colorado law on contract interpretation in a yet-to-be published case, *New Design Const. Inc. v. Hamon Contractors, Inc.* When interpreting a contract, a court must "apply the plain meaning of the words used, subject to

**FREEMAN LAW FIRM, INC.**
2104 North 30th Street
Tacoma, WA 98403
(253) 383-4500 – (253) 383-4501 (fax)

interpretation in light of the context and circumstances of the transaction." 2008 WL 2522306, *7 (Colo. App. 2008) (citing *First Christian Assembly of Go v. City and County of Denver*, 122 P.3d 1089 (Colo. App. 2005)). "When interpreting a contract, a court's primary obligation is to effectuate the intent of the contracting parties according to the plain language and meaning of the contract." *Id.* at *9 (citing *Albright v. McDermond*, 14 P.3d 318, 322 (Colo. 2000)). "The meaning and effect of a contract are to be determined from a review of the entire instrument, not merely from isolated clauses or phrases." *Id.* (internal citation omitted). "A contract should be interpreted to harmonize and, if possible, to give effect to all its provisions." *Id.* "**The overriding rules of contract interpretation require a court to apply the plain meaning of the words as used, subject to interpretation from the context and circumstances of the transaction.**" *Id.* (emphasis added).

In determining whether the LLC Agreement is unenforceable, this Court should rely on the plain language of the LLC Agreement and not consider inadmissible parole evidence. "[T]he intent of the parties should be determined from the language of the contract itself. **Extrinsic evidence is not admissible until the contract has been found to be ambiguous**." *Union Ins. Co. v. Hottenstein*, 83 P.3d at 1199 (emphasis added); *see also Montemayor v. Jacor Comm., Inc.*, 64 P.3d 916, 920 (Colo. App. 2002) ("If the terms of a contract are complete, clear, and unambiguous, no extraneous evidence may be considered in ascertaining the intent of the contracting parties"); *Roberts v. Adams*, 47 P.3d 690, 696 (Colo. App. 2002) ("Absent such ambiguity, we will not look beyond the four corners of the agreement to determine the meaning intended by the parties. There mere fact that the parties may have different opinions regarding the interpretation of the contract does not itself create an ambiguity in the contract").

Washington law agrees.  Like Colorado, Washington law allows "surrounding circumstances and other extrinsic evidence . . . to be used to determine the meaning of *specific words and terms used* and not to show an intention independent of the instrument or to vary, contradict or modify the written word."  *Hearst Comm. Inc. v. Seattle-Times Co.*, 115 P.3d 262, 267 (Wash. 2005) (emphasis in original) (internal quotations omitted).   The Washington Supreme Court recently expounded on the application of the parol evidence:

Washington continues to follow the objective manifestation theory of contracts.   Under this approach, we attempt to determine the parties' intent by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties.  **We impute an intention corresponding to the reasonable meaning of the words.   Thus, when interpreting contracts, the subjective intent of the parties is generally irrelevant if the intent can be determined from the actual words used.**  We generally give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent.  **We do not interpret what was intended to be written but what was written.**  *Id.* (internal citations omitted) (emphasis added) (clarifying *Berg v. Hudesman*, 801 P.2d 222 (Wash. 1990)).

Federal courts addressing Washington's parol evidence rule have followed *Hearst*.  "Courts should not, and cannot, rewrite the clear agreement of the parties.  **Courts simply do not interpret what was intended to be written, but rather what was in fact written**."  *G&T Conveyor Co. Inc. v. Port of Seattle*, 2008 WL 682242, *5 (W.D. Wash. 2008).  "Further, while Washington courts have held that a trial court may examine extrinsic evidence for the purpose of aiding in the interpretation of what is in an instrument, Washington courts have made it equally clear that **admissible extrinsic evidence does not include evidence that varies, contradicts, or**

RESPONDENTS' MOTION TO DISMISS - 13
PETITIONERS' PETITION FOR ARBITRATION

**FREEMAN LAW FIRM, INC.**
2104 North 30th Street
Tacoma, WA 98403
(253) 383-4500 – (253) 383-4501 (fax)

**modified the written language of the contract**." *Id.* (emphasis added). "The subjective intent of the parties is therefore irrelevant if the intent can be determined from the actual words used in a contract." *Id.*

Therefore, both Colorado and Washington law require that this Court look only at the plain, unambiguous language of the LLC Agreement and not consider extrinsic evidence as to the intention of the Parties in making the LLC Agreement.

    B.    **Separate and Apart from the Parole Evidence Rule (Which Itself is Sufficient to Restrict Review of the LLC Agreement to its Face), the Plain Language of the Integration Clause Limits the Court's Review to the Agreement Itself**

The LLC Agreement contains an integration clause, stating:

<u>Entire Agreement</u>.  This Agreement, together with the Contribution Agreement, constitutes the entire agreement among the parties hereto pertaining to the subject matter hereof and supersedes all prior agreements and understanding pertaining thereto.  (LLC Agreement, § 12.10, attached as **Exhibit A**).

Thus, by the terms of the LLC Agreement, only two documents can be considered in construing the LLC Agreement: (1) the LLC Agreement; and (2) the Contribution Agreement. Because it has been stipulated that the Contribution Agreement has never been executed or even drafted, the LLC Agreement must therefore be construed looking only at the express terms of the Agreement.  "[M]erger clauses preclude consideration of extrinsic evidence to ascertain the intent of the parties.  Integration clauses generally allow contracting parties to limit contractual disputes to issues related to the express provisions of the contract." *Nelson v. Elway*, 908 P.2d 102, 107 (Colo. 1995).  "[T]he terms of a contract intended to represent a final and complete integration of the agreement between the parties are enforceable, and extrinsic evidence offered to prove the existence of prior agreements is inadmissible." *Id.*  The Parties unambiguously

RESPONDENTS' MOTION TO DISMISS - 14
PETITIONERS' PETITION FOR ARBITRATION

**FREEMAN LAW FIRM, INC.**
2104 North 30th Street
Tacoma, WA 98403
(253) 383-4500 – (253) 383-4501 (fax)

expressed an intent that the LLC Agreement must be construed looking only at the face of the LLC Agreement.  Therefore, this Court should not admit extrinsic evidence to vary the terms of the LLC Agreement.

**C.** **The Plain Language of the LLC Agreement Requires, As An Essential Term, The Transfer of Intellectual Property Pursuant to an Executed Asset Purchase Agreement**

The core purpose of the LLC Agreement was to effect the transfer of certain intellectual property to Agrihouse, LLC pursuant to the terms of a required Asset Purchase Agreement:

> WHEREAS, Agrihouse, Inc., a Colorado corporation ("Agrihouse"), has developed certain agricultural products (the "Business Products") and the Members have formed the company so that it may develop, market, and sell the Business Products;

> WHEREAS, **pursuant** to an asset purchase agreement **to be executed** between Company and Agrihouse, which is incorporated herein by reference (the "Asset Purchase Agreement"), Agrihouse has agreed to sell and Company has agreed to purchase those assets related to, arising from, or necessary for the exploitation and commercialization of the Business Products (the "Intellectual Property").

(See **Exhibit A**) (emphasis added).

Because the terms "pursuant," and "executed" are unambiguous, there can be no genuine issue of material fact as to their meaning.  As used in the LLC Agreement, "execute" is defined as "[t]o make (a legal document) valid by signing; to bring (a legal document) into its final, legally enforceable form."  *Black's Law Dictionary* (8th ed. 2004).[2]  This is entirely consistent with the 21 other usages of the term "execute" in the LLC Agreement, all of which clearly mean "to make valid by signing."  (*See* LLC Agreement, §§ 1.1, 5.5, 5.9(b), 5.9(c),

---

[2] The other definitions of "execute" offered by Black's Law Dictionary include "to perform or complete" (i.e., an executed contract as opposed to an executory contract), to change from one form to another, to put to death, or to enforce or collect.

RESPONDENTS' MOTION TO DISMISS - 15
PETITIONERS' PETITION FOR ARBITRATION

**FREEMAN LAW FIRM, Inc.**
2104 North 30th Street
Tacoma, WA 98403
(253) 383-4500 – (253) 383-4501 (fax)

5.10(b), 5.10(c), 5.10(d), 5.10(f), 4.10(a), 4.10(c)[3], 10.1(b), 12.9, Atwell Signature Page, JD Investment Signature Page, and Agrihouse, Inc. Signature Page).  It is clear from the face of the LLC Agreement that there was an agreement between the parties to come to some future, executed agreement regarding the transfer of intellectual property and that the to-be-executed Asset Purchase Agreement.

The Asset Purchase Agreement and the transfer of intellectual property pursuant to the Asset Purchase Agreement are essential terms of the agreement.  Section 6.2(a) states:

In consideration for executing the Asset Purchase Agreement and contributing the assets thereunder, including the Intellectual Property, Agrihouse [Inc.] has been issued 80,000 Class A Units.

Thus, the Asset Purchase Agreement, and the intellectual property to be transferred thereunder, was to be consideration for 80% of the outstanding membership units in Agrihouse, LLC and 100% of the non-cancellable membership units, as well as the sole consideration received by Agrihouse, Inc.  (LLC Agreement, §§ 6.3, Schedule A).  In fact, by the plain terms of the LLC Agreement, the intellectual property to be transferred under the Asset Purchase Agreement was to be the sole asset of Agrihouse, LLC.  Without the contemplated transfer of the intellectual property, the LLC Agreement becomes meaningless and unenforceable.

Black's Law Dictionary gives three definitions of the term "pursuant to":

1. In compliance with; in accordance with; under <she filed the motion pursuant to the court's order>.
2. As authorized by; under <pursuant to Rule 56, the plaintiff moves for summary judgment>.
3. In carrying out <pursuant to his responsibilities, he ensured that all the lights had been turned out>.

*Black's Law Dictionary* (8th ed. 2004).

---

[3] Section 4.10 appears out of order in the LLC Agreement, between Section 5.10 and Section 6.1.

RESPONDENTS' MOTION TO DISMISS - 16
PETITIONERS' PETITION FOR ARBITRATION

**FREEMAN LAW FIRM, INC.**
2104 North 30th Street
Tacoma, WA 98403
(253) 383-4500 – (253) 383-4501 (fax)

Clearly, the first or second definitions proffered by Black's Law Dictionary are candidates here. Under both meanings (in compliance with, in accordance with, under, as authorized by) the scope of the intellectual property transferred is clearly defined by the "to be executed" asset purchase agreement, as the transfer is to be in compliance with, in accordance with, under, or as authorized by the Asset Purchase Agreement. Importantly, the 46 other usages of the term "pursuant" in the rest of the LLC Agreement are used in a manner entirely consistent with this interpretation of "pursuant." (*See* LLC Agreement, §§ 1.1, 2, 3.2(b), 4.4, 5.5(b), 6.5, 7.1(a), 7.1(b), 7.2(a), 7.3(a), 7.4(a), 7.4(b), 7.4(d), 7.5, 7.6(a), 7.7, 8.4, 8.6, 10.1(a), 10.1(b), 11.1, 11.2, 11.3(d), 12.7, and 12.13(b)).

This reading is in harmony with the plain language of Section 6.2 of the LLC Agreement, which states "[i]n consideration for executing the Asset Purchase Agreement and **contributing the assets thereunder, including the Intellectual Property**, Agrihouse [Inc.] has been issued 80,000 Class A Units." (Emphasis added). Section 6.2 unambiguously states that contemplated transfer of intellectual property was to occur **under** the Asset Purchase Agreement. This reading is in harmony with the plain language reading of the phrase "pursuant to" as used in the Second Recital: both the Second Recital and Section 6.2 unambiguously state that the contemplated transfer of intellectual property was to occur in accordance with the terms and conditions of the executed Asset Purchase Agreement.

The plain language of the LLC Agreement unambiguously requires that the Asset Purchase Agreement define the terms and conditions of the contemplated transfer of certain intellectual property. Because no Asset Purchase Agreement was executed, no agreement was ever reached as to the terms and conditions of the contemplated transfer of intellectual property. Therefore, it is black letter law that the LLC Agreement is unenforceable. "Parties must agree on

**FREEMAN LAW FIRM, INC.**
2104 North 30th Street
Tacoma, WA 98403
(253) 383-4500 – (253) 383-4501 (fax)

all material terms to create a valid [contract].  An agreement cannot be enforced unless the terms are sufficiently definite to allow a court to determine whether the parties have complied with them."  *Difrancesco v. Particle Interconnect Corp.*, 39 P.3d 1243, 1248 (Colo. App. 2001) (internal citations omitted); *see also Jacob's Meadow Owners Assoc. v. Plateau 44 II, LLC*, 162 P.3d 1153, 1165 (Wash. App. 2007) ("The burden of proving the existence of a contract is on the party asserting its existence.  For a contract to exist, there must be mutual assent to its essential terms"); *Geonerco, Inv. v. Grand Ridge Properties*, 191 P.3d 76, 80 (Wash. App. 2008) ("An enforceable contract requires a 'meeting of the minds' on the essential terms of the parties' agreement"); *State of Washington v. Nason*, 981 P.2d 866, 868 (Wash. App. 1999) ("When there is uncertainty of meaning in the terms of the promise that the court cannot resolve, the promise is fatally ambiguous"); *Sandman v. Sayres*, 314 P.2d 428, 429 (Wash. 1957) ("A supposed promise may be illusory because it is so indefinite that it cannot be enforced").  Therefore, the LLC Agreement, lacking the essential terms and conditions of the contemplated transfer of intellectual property, is unenforceable under either Colorado or Washington law.

> **D.**   **The LLC Agreement is an Unenforceable "Agreement to Agree" Under Colorado or Washington Law**

The plain language of the LLC Agreement shows the Parties intended for the LLC Agreement to incorporate the still-to-be-executed Contribution Agreement and Asset Purchase Agreement.  Indeed, Defendants Answer and Counterclaim admits that the parties "agreed to negotiate the terms of the transfer [sic] certain unique intellectual property."  (Pet.'s Ans., attached as **Exhibit G**, ¶ C(2).)  Therefore, the LLC Agreement is an unenforceable "agreement to agree."  "[T]here can be no binding contract if it appears that further negotiations are required to work out important and essential terms.  **Agreements to agree in the future are generally unenforceable because the court cannot force parties to come to an agreement**."

RESPONDENTS' MOTION TO DISMISS - 18
PETITIONERS' PETITION FOR ARBITRATION

**FREEMAN LAW FIRM, INC.**
2104 North 30th Street
Tacoma, WA 98403
(253) 383-4500 – (253) 383-4501 (fax)

*Difrancesco v. Particle Interconnect Corp.*, 39 P.3d 1243, 1248 (Colo. App. 2001) (internal citations omitted) (emphasis added). "To have an enforceable contract or option, it must appear that further negotiations are not required to work out important and essential terms." *Applebaugh v. Hohl*, 532 P.2d 222, 224 (Colo. App. 1975). Washington law is identical. *Keystone Land Development v. Xerox Corp.*, 94 P.3d at 950 ("We adhere to our long standing jurisprudence that agreements to agree are unenforceable"); *Sandman v. Sayres*, 314 P.2d at 429 ("An agreement for an agreement, or, in other words, an agreement to do something which requires a further meeting of the minds of the parties and without which it would not be complete is unenforceable"); *Andrus v. State of Washington*, 117 P.3d 1152, 1154 (Wash. App. 2005) (quoting Restatement (Second) of Contracts § 33: "The fact that one or more terms of a proposed bargain are left open or uncertain may show that a manifestation of intention is not intended to be understood as an offer or as an acceptance"). Therefore, because the LLC Agreement represents a promise to come to a future agreement on the terms and conditions of the contemplated transfer of intellectual property, the LLC Agreement is unenforceable under either Colorado or Washington law as an unenforceable "agreement to agree."

## VI.   The Dispute Resolution Provision  is Lacking Essential Terms

The case law in both Washington and Colorado makes it clear that contracts that fail to include essential terms are not enforceable. *Jacob's Meadow Owners Assoc. v. Plateau 44 II, LLC*, 162 P.3d 1153, 1165 (Wash. App. 2007) ("The burden of proving the existence of a contract is on the party asserting its existence. For a contract to exist, there must be mutual assent to its essential terms"). Further, the presence of an open, essential term in a purported agreement indicates that the proposed agreement is not intended to be understood as offer and acceptance. *Andrus v. State of Washington*, 117 P.3d 1152, 1154 (Wash. App. 2005) (quoting

RESPONDENTS' MOTION TO DISMISS - 19
PETITIONERS' PETITION FOR ARBITRATION

**FREEMAN LAW FIRM, INC.**
2104 North 30th Street
Tacoma, WA 98403
(253) 383-4500 – (253) 383-4501 (fax)

Restatement (Second) of Contracts § 33: "The fact that one or more terms of a proposed bargain are left open or uncertain may show that a manifestation of intention is not intended to be understood as an offer or as an acceptance").

The Dispute Resolution Section of the LLC Agreement explicitly incorporates the non-existent Contribution Agreement, as well as the entire LLC Agreement.  Section 12.13(a) of the LLC Agreement states, "[t]his <u>Section 11.14</u> [sic] shall apply to any dispute arising under or related to this <u>Agreement or the Contribution Agreement. . . involving Common Members and their affiliate or related parties</u>"  (Emphasis added).  Further, the Contribution Agreement and the entire LLC Agreement are specifically incorporated into the defined term "Disputes," which is used throughout the Dispute Resolution section.  Because the Contribution Agreement and Asset Purchase Agreements are absolutely necessary in terms of defining the scope of <u>what</u> the Parties purportedly agreed to arbitrate under the LLC Agreement, the Contribution Agreement and the Asset Purchase Agreement are essential elements of the Dispute Resolution section.  Applying state law contract principles to the Dispute Resolution section as the Supreme Court requires, it is clear that the Dispute Resolution section is unenforceable.  There was no enforceable agreement to arbitrate because there was no agreement on the central subject matter of any arbitration: the Asset Purchase Agreement and the Contribution Agreement.

## VII.    The Dispute Resolution Section is Fatally Uncertain

In addition, Washington state case law make clear that a contract that is not reasonably certain cannot be enforced.  *Zalud v. Boltz*, 102 Wash. App. 1041, n.4 (Wash. App. 2000) (quoting Restatement (Second) of Contracts § 33: "Even though a manifestation of intention is intended to be understood as an offer, it cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain").  "The concept of certainty pertains to both contract

RESPONDENTS' MOTION TO DISMISS - 20
PETITIONERS' PETITION FOR ARBITRATION

**FREEMAN LAW FIRM, INC.**
2104 North 30th Street
Tacoma, WA 98403
(253) 383-4500 – (253) 383-4501 (fax)

performance and the equitable remedy of specific performance.  **The requirement of certainty inheres in contract formation: a manifestation to be bound cannot be accepted so as to form a binding contact unless the terms of the contract are reasonably certain**."  *West v. Wood*, 81 Wash. App. 1045 (Wash. App. 1996) (citing Restatement (Second) of Contracts §33).

Applying Washington state law to the Dispute Resolution section, it is clear that the Dispute Resolution section is unenforceable due to its inherent uncertainty.  Specifically, after defining the term "Dispute" to incorporate both the entire LLC Agreement and the non-existent Contribution Agreement, the Dispute Resolution section of the LLC Agreement states "[t]he provisions of this Section 11.14 shall be the exclusive method of resolving Disputes."

Accordingly, given the non-existence of the Contribution Agreement and the non-existence of the Asset Purchase Agreement, there cannot be the requisite certainty as to what the Parties purportedly agreed to arbitrate.  Because the Dispute Resolution section is unfinished, incomplete, and ambiguous, the Dispute Resolution section is unenforceable *on its own* under Washington law, just as the entire LLC Agreement is unenforceable under Washington law.

Respectfully submitted this 22nd day of June, 2009.


FREEMAN LAW FIRM, INC.



By:_ ___/s/ Spencer D. Freeman_____
     Spencer D. Freeman
     WSBA No. 25069
     FREEMAN LAW FIRM, INC.
     2104 North 30th Street
     Tacoma, WA 98403
     Telephone: 253-383-4500
     Facsimile: 253-383-4501
     sfreeman@freemanlawfirm.org
     Attorney for Respondents Agrihouse, Inc. and
     Robert J. Atwell, Jr.

RESPONDENTS' MOTION TO DISMISS - 21
PETITIONERS' PETITION FOR ARBITRATION

**FREEMAN LAW FIRM, INC.**
2104 North 30th Street
Tacoma, WA 98403
(253) 383-4500 – (253) 383-4501 (fax)

## **CERTIFICATE OF SERVICE**

I, Spencer D. Freeman, do hereby certify that on the 22nd day of June 2009, I caused true and correct copies of the following:

1.        Respondents' Motion to Dismiss Petitioners' Petition for Arbitration;

Exhibits A-F and

2.        this Certificate of Service

to be served on:

Michael David Myers and Ryan C. Nute, Myers & Company, P.L.L.C., 1809 Seventh Avenue, Suite 700, Seattle, WA 98101

by filing a copy of the same with the Clerk of the Court using the court's CM-ECF system.  By the terms of their agreement and the rules of the court, they will be served with a copy of the same via the CM-ECF system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed at Seattle, Washington,

DATED this 22nd day of June 2009.

**FREEMAN LAW FIRM, INC.**


By:_s/ Spencer D. Freeman_____
Spencer Freeman
WSBA No. 25069
FREEMAN LAW FIRM, INC.
2104 North 30th Street
Tacoma, WA 98403
Telephone: 253-383-4500
Facsimile: 253-383-4501
sfreeman@freemanlawfirm.org
Attorney for Respondents Agrihouse, Inc. and Robert J. Atwell, Jr.

RESPONDENTS' MOTION TO DISMISS - 22
PETITIONERS' PETITION FOR ARBITRATION

**FREEMAN LAW FIRM, INC.**
2104 North 30th Street
Tacoma, WA 98403
(253) 383-4500 – (253) 383-4501 (fax)